UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID F., § § | |
| Plaintiff, § § | |
| v. § | Case # 6:20-cv-6770-DB |
| § | |
| COMMISSIONER OF SOCIAL SECURITY, § § | MEMORANDUM DECISION AND ORDER |
| Defendant. § | |

## INTRODUCTION

Plaintiff David F. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 13).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 11. Plaintiff also filed a reply brief. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 11) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed an application for SSI on January 26, 2017, alleging disability beginning January 1, 2016 (the disability onset date), due to "learning disability and severe migraines." Transcript ("Tr.") 192-97, 221. Plaintiff's claim was denied initially on May 9, 2017, after which he requested an administrative hearing. Tr. 62.

On July 18, 2019, Administrative Law Judge Michael Devlin (the "ALJ") conducted a hearing in Rochester, New York, at which Plaintiff appeared and testified and was represented by Elias Farah, an attorney. Tr. 62, 77-94. Sakinah Malik, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*. The ALJ issued an unfavorable decision on August 8, 2019, finding that Plaintiff was not disabled. Tr. 62-72. On August 7, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-7. The ALJ's August 8, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his August 8, 2019 decision:

1. The claimant has not engaged in substantial gainful activity since January 26, 2017, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: migraines; unspecified intellectual disorder; persistent depressive disorder; and social anxiety disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he should avoid even moderate exposure to vibration; never work at unprotected heights or near moving machinery; able to work in an environment with no more than moderate level of noise as defined in the Selected Characteristics of Occupations; understand, remember, and carry out simple instructions and tasks; occasionally interact with coworkers and supervisors; little to no contact with the general public; and able to consistently maintain concentration and focus for up to two hours at a time.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on September 10, 1990 and was 26 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 26, 2017, the date the application was filed (20 CFR 416.920(g)).

Tr. 62-72.

Accordingly, the ALJ determined that, based on the application for supplemental security income protectively filed on January 26, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 72.

## ANALYSIS

Plaintiff asserts two points of error. *See* ECF No. 10-1 at 1, 6-11. Plaintiff first argues that the ALJ failed to develop the record by not considering the recommendation of consultative psychological examiner Kristina LaBarbera, Psy.D. ("Dr. LaBarbera), that Plaintiff should be referred for intelligence testing. *See id*. at 6-9. Next, Plaintiff argues that the ALJ erred by giving significant weight to Dr. LaBarbera's opinion but then failing to incorporate her opined mental health limitations into the RFC finding. *See id*. at 9-11.

The Commissioner argues in response that ALJ carefully considered Dr. LaBarbera's report and properly concluded that, because the record was fully developed, there was no need for further intelligence testing. *See* ECF No. 11-1 at 5-12. Accordingly, argues the Commissioner, substantial evidence supports the ALJ's step three finding that Plaintiff's impairments did not meet or medically equal Listing 12.05. *See id*. The Commissioner also argues that the ALJ properly considered the limitations in Dr. LaBarbera's opinion, and substantial evidence supports the RFC finding for a full range of unskilled work. *See id*. at 12-18.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review, the Court finds that the ALJ properly considered the record evidence and his finding that Plaintiff could perform a range of unskilled work at all exertional levels is supported by substantial evidence, including medical opinion evidence, the treatment records, and Plaintiff's activities of daily living.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Furthermore, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual

6

functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Contrary to Plaintiff's contentions (*see* ECF No. 10-1 at 6-9), the ALJ had substantial evidence to support his findings regarding Plaintiff's cognitive functioning. *Peterson v. Berryhill*, 2018 WL 4232896 *4 (W.D.N.Y. 2018) (citing *Tatelman v. Colvin*, 296 F.Supp.3d 608, 612 (W.D.N.Y. 2017) (The ALJ's duty to develop the record is not infinite. When evidence in hand is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary.); *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (The ALJ was not required to further develop the record by seeking additional medical records where the evidence already in the record was "adequate for [the ALJ] to make a determination as to disability" *Rosa v. Callahan*, 168 F.3d at 79 n.5 ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim").

Furthermore, when the evidence is inadequate to determine whether a claimant is disabled, an ALJ may obtain additional information and has discretion on how to resolve such an issue. *See* 20 C.F.R. § 416.920b. Thus, it is within the ALJ's discretion to order a consultative examination, but he is not required to do so. *See* 20 C.F.R. §§ 416.912(b)(2), 416.917, 416.919, 416.919a ("We *may* purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim"), 416.920b(b)(2)(iii) ("We *may* ask you to undergo a consultative examination at our expense") (emphases added); *Tankisi*, 521 F. App'x at 32 (finding no duty to order consultative intelligence evaluation where record did not suggest any further cognitive limitations than those already incorporated in RFC finding for work involving no complex or detailed instructions); *Grys v. Berryhill*, No. 17-CV-00718F, 2019 WL 210844, at *5 (W.D.N.Y. Jan. 16, 2019) (acknowledging that remand not warranted for ALJ's failure to order a cognitive examination to assess intelligence where there is sufficient information in the record supporting the determination that the claimant's intellectual impairment did not preclude the performance of substantial gainful employment) (citing *Helwig v. Comm'r of Soc. Sec.*, No. 17-CV-0859, 2018 WL 6330242, at **3-4 (W.D.N.Y. Dec. 4, 2018) (citing cases)).

As noted above, ultimately it is Plaintiff who bears the burden of demonstrating that he is disabled. *See* 20 C.F.R. § 416.912. Plaintiff here has not shown that the ALJ had any obligation to further develop the record. Although Plaintiff alleged that he was disabled in part due to his learning disability, Plaintiff has been represented by counsel since January 17, 2017 (more than one week before he protectively filed his SSI application on January 26, 2017), and he did not seek intelligence testing or request that the agency obtain such testing. *See* Tr. 79-80, 92-93, 95, 109, 124, 143, 154-55, 182, 187, 230-31, 235-36, 253-54, 95, 192, 207; *see also Grys*, 2019 WL

210844, at *5 ("Nor did Plaintiff, who has been represented by legal counsel since March 20, 2014 . . . independently seek a consultative intellectual assessment or request the SSA obtain such an assessment") (citing *Helwig*, 2018 WL 6330242, at *5 (the fact that claimant was represented by legal counsel since 2011, yet never sought intelligence testing prior to administrative hearing in 2017, undermined claimant's argument that ALJ should have obtained a consultative assessment of claimant's borderline intellectual functioning)). Thus, the record here was fully developed, and the ALJ properly evaluated the evidence and issued a decision based on that evidence. Tr. 64-71.

In addition, Dr. LaBarbera's report only *recommended* that Plaintiff be referred for an IQ assessment, and this recommendation was separate from her opinion, which she rendered after performing her own examination. *See* Tr. 309. Although Dr. LaBarbera identified marked limitations in Plaintiff's ability to perform complex tasks in her April 2017 report, she concluded that he would have no more than moderate difficulties in applying simple instructions, making work-related decisions, sustaining concentration, performing tasks on pace, sustaining an ordinary routine, and regulating emotions/controlling behavior. *See id*.

Contrary to Plaintiff's suggestion (*see* ECF No. 9-1 at 7-8), the ALJ was not obligated to recite Dr. LaBarbera's recommendation (or her report) word-for-word. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ does not have to state on the record every reason justifying a decision . . . . An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.") (internal quotation marks and citations omitted); *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) ("[W]here the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.") (citing *Mongeur v. Heckler*, 722 F.2d

1033, 1040 (2d Cir. 1983); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

Furthermore, as noted above, the ALJ's RFC finding is not required to precisely mirror a medical opinion. *See, e.g., Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) ("Moreover, the ALJ must weigh all the evidence to make an [RFC] finding consistent with the record as a whole."); *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *McKillip v. Comm'r of Soc. Sec.*, No. 18-CV-854S, 2019 WL 567759 at *9 (W.D.N.Y. Nov. 1, 2019) ("It is the ALJ's duty to formulate the RFC after evaluating the opinion evidence, treatment records, and the testimony of the claimant.") (internal quotation, citation omitted). The ALJ's decision reflects that he fully considered Dr. LaBarbera's report, and he explained why he found no justification for administering intelligence testing. *See* Tr. 65-66, 68. In addition, state agency psychological consultant J. Dambrocia Ph.D. ("Dr. Dambrocia"), reviewed Dr. LaBarbera's report and likewise did not deem consultative intelligence testing to be warranted based on the evidence in the record. *See* Tr. 65, 105-06, 315.

To the extent that Plaintiff implies that his impairment could have satisfied Listing 12.05 (intellectual disorder) if a new intelligence test were to reveal a low enough IQ score, he has not met his burden. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (noting it is claimant's burden to demonstrate that impairment meets "*all* of the specified medical criteria" (emphasis in original)); An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Id*. Furthermore, an ALJ may reject an IQ score when it is inconsistent with other record evidence. *See Burnette v. Colvin*, 564 F. App'x 605. 608 (2d Cir. 2014).

To meet Listing 12.05, Plaintiff's impairment would need to satisfy all of the criteria of the Listing, including evidence of significant deficits in adaptive functioning, and evidence that the disorder began prior to age 22. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05 (2019). Specifically, the version of Listing 12.05 in effect at the time of the ALJ's decision provides:

12.05 Intellectual disorder (see 12.00B4), satisfied by A or B:

A. Satisfied by 1, 2, and 3 (*see* 12.00H):

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

OR

B. Satisfied by 1, 2, and 3 (*see* 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

    2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    a. Understand, remember, or apply information (*see* 12.00E1); or

    b. Interact with others (see 12.00E2); or

    c. Concentrate, persist, or maintain pace (*see* 12.00E3); or

    d. Adapt or manage oneself (*see* 12.00E4); and

    3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(B).

    Here, Plaintiff has not shown that his impairment resulted in the requisite deficits in adaptive functioning or the other required listing criteria, and substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or medically equal Listing 12.05. *See* Tr. 65-68. First, the standardized testing in the record shows that, at the age of 10, Plaintiff had an IQ score of 80 in 2000, and a school evaluator in 2008 noted that Plaintiff was felt to have "low average cognitive potential," such that additional intelligence testing was not deemed necessary. *See* Tr. 65-68, 272-74. Plaintiff also alleged in his SSI application that his disability began on January 1, 2016, not before he attained age 22. *See* Tr. 192, 207.

    Even more significantly, with respect to the four areas of mental functioning, the ALJ properly considered the record evidence, which showed that Plaintiff had only moderate limitations during the relevant period. *See* Tr. 65-68. For example, Plaintiff was able to attend to his personal care, travel independently, take public transportation, perform some cleaning tasks, talk on the phone, and visit a community center. *See* Tr. 64-66, 71, 81, 88, 211-14, 272, 274, 308,

312. Plaintiff also performed some work activity during the relevant period, including as a cleaner at a Dollar Tree store for approximately six months in 2018. *See* Tr. 64-66, 71, 81-83, 204-06, 246, 605. The ALJ further considered that Dr. LaBarbera found only marked limitations in Plaintiff's ability to perform complex tasks and was otherwise no more than moderately limited in all other areas of mental functioning. *See* Tr. 65-66, 309. The ALJ also properly considered that state agency psychological consultant Dr. Dambrocia reviewed the record, including Dr. LaBarbera's report, and concluded that Plaintiff had only mild or moderate limitations in the "B criteria" of the listings, and that his impairments did not meet or medically equal any listing, including Listing 12.05. Tr. 65-66, 99-100. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("It was appropriate for the ALJ to rely on the report, as the State agency psychiatrist was the only expert of record who specifically assessed whether A.O.'s impairments met or equaled a listed impairment.").

Accordingly, the ALJ properly found that Plaintiff had only moderate limitations in all four areas of mental functioning relevant to Listing 12.05. Tr. 65-66. Thus, Plaintiff could not satisfy listing 12.05 (regardless of his current IQ score), because he needed to establish at least one extreme limitation or two marked limitations. Tr. 67-68. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05B(2). Because Plaintiff has failed to establish that the ALJ erred by not seeking intelligence testing, and substantial evidence supports the ALJ's finding that Plaintiff's mental impairment did not meet Listing 12.05, Plaintiff's argument fails.

With respect to Plaintiff's second point, the Court finds that the ALJ reasonably considered the medical opinion evidence, and the ALJ's finding that Plaintiff retained the ability to perform simple, routine tasks consistent with unskilled work was supported by substantial evidence. Tr. 20. Furthermore, the ALJ cited to other substantial evidence to support the RFC, which reasonably

312. Plaintiff also performed some work activity during the relevant period, including as a cleaner at a Dollar Tree store for approximately six months in 2018. *See* Tr. 64-66, 71, 81-83, 204-06, 246, 605. The ALJ further considered that Dr. LaBarbera found only marked limitations in Plaintiff's ability to perform complex tasks and was otherwise no more than moderately limited in all other areas of mental functioning. *See* Tr. 65-66, 309. The ALJ also properly considered that state agency psychological consultant Dr. Dambrocia reviewed the record, including Dr. LaBarbera's report, and concluded that Plaintiff had only mild or moderate limitations in the "B criteria" of the listings, and that his impairments did not meet or medically equal any listing, including Listing 12.05. Tr. 65-66, 99-100. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("It was appropriate for the ALJ to rely on the report, as the State agency psychiatrist was the only expert of record who specifically assessed whether A.O.'s impairments met or equaled a listed impairment.").

Accordingly, the ALJ properly found that Plaintiff had only moderate limitations in all four areas of mental functioning relevant to Listing 12.05. Tr. 65-66. Thus, Plaintiff could not satisfy listing 12.05 (regardless of his current IQ score), because he needed to establish at least one extreme limitation or two marked limitations. Tr. 67-68. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05B(2). Because Plaintiff has failed to establish that the ALJ erred by not seeking intelligence testing, and substantial evidence supports the ALJ's finding that Plaintiff's mental impairment did not meet Listing 12.05, Plaintiff's argument fails.

With respect to Plaintiff's second point, the Court finds that the ALJ reasonably considered the medical opinion evidence, and the ALJ's finding that Plaintiff retained the ability to perform simple, routine tasks consistent with unskilled work was supported by substantial evidence. Tr. 20. Furthermore, the ALJ cited to other substantial evidence to support the RFC, which reasonably

accommodated any emotional, behavioral, and intellectual difficulties that Plaintiff experienced during the relevant period. Tr. 17-24. The ALJ's determination is supported by opinions that Plaintiff could perform simple tasks; treatment notes that showed Plaintiff was stable with routine medication management and therapy; generally unremarkable mental status examinations; and Plaintiff's ability to perform a wide range of daily activities, including part-time work. Tr. 21-24.

Plaintiff further argues that the ALJ erred by giving significant weight to Dr. LaBarbera's opinion, then failing to incorporate the mental health limitations to which Dr. LaBarbera opined. *See* ECF No. 10-1 at 9-11. As noted above, Dr. LaBarbera examined Plaintiff and concluded that he was markedly limited in his ability to understand, remember, or apply complex directions and instructions; but had no limitations in his ability to interact adequately with supervisors, coworkers, and the public; mild limitations in his ability to regulate emotions, control behavior, maintain wellbeing, be aware of normal hazards, and take appropriate precautions; and moderate limitations in all other areas. *See* Tr. 69-70, 309. Dr. LaBarbera further stated that the "results of the examination appear to be consistent with psychiatric and cognitive problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." Tr. 69, 309.

Although the ALJ reasonably incorporated additional limitations based on his consideration of the record evidence, Dr. LaBarbera's opinion nevertheless fully supports the ALJ's RFC finding for a reduced range of unskilled work, specifically, that Plaintiff could: "understand, remember, and carry out simple instructions and tasks; occasionally interact with coworkers and supervisors; little to no contact with the general public; and able to consistently maintain concentration and focus for up to two hours at a time." Tr. 68-70, 309. *See Zabala v. Astrue*, 595 F.3d 402, 410-411 (2d Cir. 2010) ("None of the clinicians who examined [Zabala]

indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations," and finding RFC for unskilled work was well supported); *Mayer v. Comm'r of Soc. Sec.*, No. 18-CV-0062, 2019 WL 2266795, at *5 (W.D.N.Y. May 28, 2019) ("The Second Circuit has repeatedly held that 'moderate' limitations do not preclude a plaintiff's ability to perform unskilled work.") (collecting cases); *West v. Berryhill*, 298 F. Supp. 3d 577, 579 (W.D.N.Y. April 9, 2018) (finding opinion of "moderate" limitations in attention and concentration consistent with RFC that includes limitation to maintaining concentration and focus for up to two hours at a time) (collecting cases).

The ALJ also noted that Dr. LaBarbera's opinion was well supported and consistent with the other evidence. Tr. 69-70, 306-10. *See* 20 C.F.R. §416.927(c)(1), (3)-(6); *Grega v. Saul*, 816 F. App'x 580, 582 (2d Cir. 2020) (finding ALJ properly relied on the opinion of the consultative examiner, which was consistent with treatment records, test results, and reported daily activities); *Christina v. Colvin*, 594 F. App'x 32, 33 (2d Cir. 2015) (rejecting the argument that it was reversible error for the RFC finding to not exactly mirror a consultative examiner's opinion, where such RFC finding was supported by the record evidence as a whole and much of the consultative examiner's report); *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Furthermore, an ALJ is not required to accept every aspect of a particular medical source opinion. *See Christina v. Colvin*, 594 F. App'x 32, 33 (2d Cir. 2015) (summary order) (finding no error where ALJ discounted a portion of the consultative examiner's opinion that was inconsistent with other record evidence).

Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). Furthermore, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *Schaal v. Apfel*, 134 F.3d at 504 ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"); *Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (holding that the ALJ properly resolved conflicts in the medical evidence after considering the record in its entirety); *see also Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.").

Here, the ALJ did not rely solely on Dr. LaBarbera's opinion. As noted above, the ALJ also properly gave significant weight to the opinion of state agency psychological consultant Dr. Dambrocia, who reviewed the evidence in the file in May 2017, including Dr. LaBarbera's report, and concluded that Plaintiff retained the ability to understand and remember simple instructions and sustain attention and concentration for tasks; he may have difficulties relating with others and/or adapting to changes; his ability to deal with coworkers and the public would be somewhat reduced, but adequate to handle brief and superficial contact; and his ability to tolerate and respond

appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting. Tr. 66, 69, 105-06. *See* 20 C.F.R. §§ 416.913a(b)(1), 416.927(e) (evidence to be considered by the ALJ includes findings made by State agency psychological consultants, who are highly qualified and experts in Social Security disability evaluation); *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (ALJ's finding supported by substantial evidence, including the opinion of state agency psychological consultant).

The ALJ also properly considered the evidence submitted after Dr. Dambrocia's review, including findings from later examinations, which failed to support any additional mental limitations. Tr. 69-71. For example, when Plaintiff presented for evaluation and treatment of headaches (an impairment for which the Plaintiff does not allege error), examination notes document that Plaintiff was oriented; he exhibited no speech or language deficits; and his comprehension was intact. *See* Tr. 69-70, 606, 674; *see also* Tr. 70-71, 313 410, 434 (normal mental status examinations).

In addition, although Plaintiff alleged that his learning disability affected his ability to perform activities of daily living, as the ALJ noted, he was nevertheless able to care for his personal needs, travel independently, take public transportation, perform some cleaning tasks, talk on the phone, and visit a community center. Tr. 64-66, 69-71, 81, 88, 211-14, 272, 274, 308, 312. *See* 20 C.F.R. § 04.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (rejecting

plaintiff's contention that ALJ impermissibly relied on vague medical evidence and on his own lay opinion, and finding that ALJ properly relied on a variety of medical and other evidence in arriving at his RFC finding, including Plaintiff's testimony that he performed certain activities of daily living); *Lewis v. Colvin*, 548 F. App'x 675, 677 (2d Cir. 2013) (ALJ's RFC finding supported by substantial evidence including activities of daily living). Plaintiff also performed some work activity during the relevant period, including as a cleaner at Dollar Tree for approximately six months in 2018. Tr. 64-66, 69-71, 81-83, 204-06, 246, 605.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). Plaintiff fails to point to evidence showing that his intellectual capacity would preclude him from engaging in simple tasks. While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the record, including the treatment reports, the medical opinions, and Plaintiff's mostly routine and conservative care, as well as Plaintiff's activities of daily living, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE